UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RAYMOND J. FALLICA,

                           Plaintiff,                          **REPORT AND**

      -against-                                     **RECOMMENDATION**

BANK OF AMERICA, REVERSE
MORTGAGE SOLUTIONS, MONICA           22-CV-1297 (JS)(SIL)
TARANTINO, RAS LEGAL GROUP,
FRENKEL LAMBERT WEISS WEISMAN &
GORDON LLP, WEB TITLE, and NEW
YORK STATE,

                            Defendants.
-----------------------------------------------------------------X

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this civil rights action, on referral from the Honorable Joanna Seybert for Report and Recommendation, are: (i) Defendants' Bank of America, Reverse Mortgage Solutions, Frenkel Lambert Weiss Weisman & Gordon LLP ("Frenkel Lambert"), and RAS Legal Group consolidated motion to dismiss; (ii) Defendant New York State's motion to dismiss; and (iii) Defendant Web Title's motion to dismiss. *See* Notice of Consolidated Motion to Dismiss ("Defendants' Consolidated Motion" or "Defs.' Con. Mot."), Docket Entry ("DE") [34]; Defendants' Consolidated Memorandum of Law in Support of Motion to Dismiss ("Defs.' Con. Mem."), DE [34-2]; Notice of Motion ("NY Mot."), DE [35], Memorandum of Law in Support of Defendant State of New York's Motion to Dismiss the Amended Complaint ("NY Mem."), DE [35-1]; Notice of Motion ("Web Title Mot."), DE [71]; Memorandum of Law in Support of Motion to Dismiss ("Web Title Mem."), DE [71-2].

By way of Complaint dated March 8, 2022, followed by an Amended Complaint dated April 25, 2022, Plaintiff *pro se* Raymond J. Fallica ("Plaintiff" or "Fallica") commenced this action against Defendants Bank of America, Reverse Mortgage Solutions, Frenkel Lambert, RAS Legal Group, Monica Taratino ("Tarantino"), New York State and Web Title (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 ("Section 1983") and under state law for violations of his civil rights related to a mortgage foreclosure action in New York State Supreme Court, Suffolk County alleging that Defendants engaged in mail and wire fraud in violation the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §§ 1961 *et seq.*, unlawful seizure under the Fourth Amendment, mortgage fraud, and breach of fiduciary duty.  *See* Complaint ("Compl."), DE [1]; Amended Complaint ("AC"), DE [7].  Defendants seek to dismiss all claims both for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  *See* Defs.' Con. Mot.; NY Mot.; Web Title Mot.  For the reasons set forth below, the Court recommends granting Defendants' Consolidated Motion, New York State's Motion and Web Title's Motion in their entireties and dismissing Plaintiff's Amended Complaint with prejudice.

## I.   BACKGROUND

### A. Relevant Facts

The following facts are taken from the Amended Complaint and the parties' submissions, and are assumed true for purposes of this Report and Recommendation. Although difficult to follow, as explained below, Fallica's claims center around his rights as heir to his mother Nancy Fallica's estate, which he has invoked in the

2

context of real property for which Defendants held a reverse mortgage that was foreclosed upon.

Plaintiff is a New York resident who resides, or used to reside, at 6 Ethel Court, Wheatly Heights, NY 11789 (the "Property").  AC at 1-2.  Fallica alleges that the deed for the Property dated August 14, 1978 is in the name of Monica Tarantino, formerly Monica Fallica, Plaintiff's sister.  *Id.* at 3-4.  According to Fallica, on September 27, 2010, Defendant Bank of America issued a reverse mortgage on the Property to Nancy Fallica, Plaintiff's mother, without a deed in her name or clear title to the Property. *Id.* at 3-4.  Nancy Fallica died three months later on December 16, 2010.  *Id.* at 9.

According to Plaintiff, the reverse mortgage to Nancy Fallica was fraudulently issued with no deed or clear title in order to defraud Fallica and "strip" Nancy Fallica's estate of funds.  *Id.*  Plaintiff alleges that the fraudulent deed and reverse mortgage were "certified" by Defendants Frenkel Lambert and RAS Legal Group during the subsequent foreclosure action on the Property.  *Id.* at 9.  According to Plaintiff, these events constituted breach of fiduciary duty, and the title to the Property should not have been transferred from Tarantino to Nancy Fallica, although it is not clear whether Plaintiff is alleging that the deed was never in Nancy Fallica's name, or whether the deed was in her name but defective or both.  *Id.* at 5.

Fallica further asserts that Tarantino assumed power of attorney for Nancy Fallica's estate, and Tarantino failed to inform the estate's heirs of his mother's death thereby facilitating and concealing the mortgage fraud.  *Id.* at 6.  He claims that Tarantino assumed power of attorney for Nancy Fallica while she was "on her

deathbed, heavily medicated" and "not of sound mind and body." *Id.* at 7. Plaintiff also alleges that Tarantino maliciously concealed mortgage fraud in 2006 and 2008 with a defective deed and title, although it is not clear whether these allegations are related to the present action. *Id.* at 7-8. In any event, Plaintiff claims that Bank of America and Reverse Mortgage Solutions knowingly and willfully aided and abetted Tarantino's fraud issuing a fraudulent reverse mortgage for Nancy Fallica. *Id.* at 7-8, 24-25.

In sum, Fallica appears to allege that Bank of America issued a reverse mortgage on the Property in Nancy Fallica's name just months before her death and that Defendants Reverse Mortgage Solutions and Bank of America continued to collect payments from the estate during the period commencing with his mother's death in 2010 through 2019, stripping the estate of funds to Plaintiff's detriment as Nancy Fallica's heir. *Id.* at 8. He claims that Tarantino as power of attorney for the estate remained silent as to these events, all of which constituted mortgage fraud and a breach of fiduciary duty. *Id.*

In August 2013, Defendant Frenkel Lambert requested a copy of Nancy Fallica's death certificate to confirm identities of her heirs for her estate. *Id.* at 9. Plaintiff claims that this was three years after his mother's death and that the firm immediately sought foreclosure, which, according to Fallica, was a breach of fiduciary duty. *Id.* at 9. Plaintiff further alleges that other unspecified Defendants failed to notify Nancy Fallica's heirs of her death and that he never received notice to buy the home, sell the home, or satisfy the debt. *Id.* at 9-10.

4

On July 24, 2014, Defendants Reverse Mortgage Solutions and Bank of America improperly served him with "Letters of Limited Administration" ("Letters") filed with the Surrogate Court of Suffolk County at an incorrect address. *Id.* at 10. According to Fallica, the Letters were sent to him at 6 Ethel Court, Babylon, New York 11798, rather than 6 Ethel Court, Wheatley Heights, New York 11798. *Id.* at 10-11. Plaintiff claims that Frenkel Lambert concealed the Letters by sending them to the wrong address although he does not specify whether he received the documents and accepted service despite the error. *Id.* at 20-21.

Next, Fallica alleges that on October 15, 2014, Defendants used the Letters to have Defendant Web Title void the existing deed dated August 14, 1978 under Tarantino's name and issue a new title for the Property. *Id.* at 11. Plaintiff claims that this was at the directive of Frenkel Lambert and Reverse Mortgage Solutions. *Id.* at 17. According to Fallica, Web Title aided and abetted and conspired with Bank of America to defraud him as his mother's heir by issuing false statements during the foreclosure action. *Id.* at 11-12.

Then, sometime in 2016, Plaintiff claims that RAS Legal Group was substituted for Frenkel Lambert as counsel in the foreclosure action. *Id.* at 11. The foreclosure on the Property "could not proceed until legal representation was appointed" although no further explanation is provided except to say that Tarantino failed to obtain "full disclosure legal representation" of Nancy Fallica's estate. *Id.* at 11. Plaintiff alleges that the nine-year-long foreclosure action was a scheme to defraud and violate his rights as heir to Nancy Fallica and was a misuse of Federal

Housing Authority and Department of Housing and Urban Development funds. *Id.* at 21-22. Plaintiff does not state whether he was involved in foreclosure proceedings, such as whether he appeared and defended against the action.

According to Fallica, in 2019 and 2020 and then again in 2022, RAS Legal Group initiated a "probable fraudulent illegal" foreclosure action, a holdover proceeding, and eviction proceedings against him. *Id.* 11-12. He claims that Reverse Mortgage Solution's testimony during the holdover trial enabled RAS Legal Group to establish a fraudulent reverse mortgage note. *Id.* at 19. On March 22, 2022, during an eviction proceeding in the Second District Court of Suffolk County, RAS Legal Group testified that Nancy Fallica was always on the deed for the Property, which Plaintiff contends is false. *Id.* at 13. Three days later, he retrieved all of the copies of deeds and mortgages for the Property and claims that the deed was only in Monica Tarantino's name. *Id.* at 13-14. According to Plaintiff, all Defendants facilitated fraud upon the Court through this alleged scheme of creating a false deed and illegally seizing the Property through the foreclosure action, impairing on his rights as Nancy Fallica's heir by stripping the estate of funds all in violation of a duty to act in the estate's best interest. *Id.* at 15-17.

Plaintiff further alleges that Defendant New York State "violated its own policy" and facilitated fraud by "fail[ing] to follow best practices," such as confirming that the name on a deed matches the name of the borrower. *Id.* at 15. According to Fallica, unspecified Defendants' "fraud upon court establish[ed] state failure oversight protection by NY State Attorney General, Defendant." *Id.* at 16, 26.

Plaintiff alleges that the reverse mortgage was a "nullity enforce[d] by NY State Courts Defendant," that the "State of New York lax rules give appearance conflict of interest, enabled foreclosure by the state." *Id.* at 16-17.

Construing the Amended Complaint liberally, Plaintiff alleges that all Defendants maliciously facilitated mortgage fraud and carried out a fraudulent scheme through a foreclosure action on the reverse mortgage that was issued on a false title in Nancy Fallica's name, and continued to withdraw funds from the estate after her death thereby interfering with his rights as Nancy Fallica's heir. *Id.* at 27. Plaintiff further alleges that Defendants intentionally facilitated fraud on the court throughout the foreclosure action in failing to give proper notice to Plaintiff, altering documents and providing false testimony. *Id.* at 28-30. Fallica claims these actions constituted mail and wire fraud in violation of RICO, illegal seizure of property, common law fraud, and a breach of fiduciary duty. *See generally* AC.

In their motion papers, Defendants allege certain facts. Specifically, they state that Nancy Fallica, Plaintiff's mother, took title to the Property by deed dated September 3, 2010 and recorded September 21, 2010 in Liber 12638 at Page 45. *See* Defs.' Con. Mem. at 1. Thereafter, Nancy Fallica executed a home equity conversion note dated September 27, 2010 in the maximum amount of $502,500 (the "Note"). *Id.* As security for payment of the Note, Nancy Fallica gave a reverse mortgage on the Property, which was recorded November 18, 2010 in Liber 22011 at Page 254 (the "Mortgage"). *Id.* Defendants fail to specify Tarantino's involvement in the events, if any, or whether she was on the title or deed to the Property at any point.

7

Further, although Nancy Fallica passed away December 16, 2010, the Suffolk County Public Administrator only issued letters of administration for her estate on November 14, 2014. *Id*. No explanation is provided for the delay, however. Then, an action to foreclose the Mortgage was commenced in the Supreme Court of the State of New York, County of Nassau on March 23, 2015 under index number 602873/2015. *Id*. Plaintiff was named as a party to the foreclosure as an heir of Nancy Fallica, and he was personally served. *Id*. The foreclosure complaint was amended, and Fallica was also served with a supplemental summons and the amended complaint. *Id*. Frenkel Lambert was then substituted with RAS Legal Group as counsel in the foreclosure action for the plaintiff, Bank of America *Id*. at 2.

A judgment of foreclosure and sale was entered on August 5, 2019. *Id*. No explanation is provided for this delay either, or regarding Plaintiff's involvement, if any, in the foreclosure action. No appeal was taken of the judgment, and the property was sold at auction on November 7, 2019 to Bank of America for $450,000. *Id*. The referee's deed was recorded December 13, 2019 in Liber 13040 at Page 45. *Id*.

### B. Procedural History

Plaintiff commenced this action by way of Complaint dated March 8, 2022, followed by an Amended Complaint dated April 25, 2022, alleging: (i) mail and wire fraud in violation of RICO, (ii) unlawful seizure under the Fourth Amendment in violation of Section 1983, (iii) mortgage fraud, and (iv) breach of fiduciary duty. *See generally* AC. Plaintiff seeks damages for the value of the Property and punitive damages due to the alleged willful misconduct in excess of $13 million. AC at 33-34.

Bank of America, Frenkel Lambert, RAS Legal Group and Reverse Mortgage Solutions each requested a pre-motion conference for leave to file motions to dismiss. *See* DEs [10], [11], [13], [14].  On June 16, 2022, Judge Seybert entered an electronic order permitting these Defendants to proceed via a consolidated motion and set a briefing schedule.  *See* June 16, 2022 Electronic Order.  Then, Plaintiff advised the Court that he did not receive notice of Defendants' pre-motion conference letters or the briefing schedule, so Judge Seybert stayed the deadlines.  *See* July 6, 2023 Electronic Order.

In the meantime, New York State appeared in the case and also sought leave to file a motion to dismiss.  *See* DEs [24], [25].  Judge Seybert re-set a briefing schedule on the Defendants' Consolidated Motion and New York State's Motion.  *See* July 25, 2022 Electronic Order.  Defendants' Consolidated Motion was filed on August 2, and New York State's Motion was filed on August 9, 2022.  *See* Defs.' Con. Mot; NY Mot.

On September 30, 2022, Plaintiff filed a document titled Counterclaim Defendant NY State Motion to Dismiss, which appears to be Plaintiff's Opposition to New York State's Motion.  *See* DE [42], ("Pl. NY Mot. Opp.").  Plaintiff also filed a letter titled Counterclaim Moving Defendants to File a Motion to Dismiss Before Discovery Would be Fraud on the Court under RICO, which appears to be the Opposition to the Defendants' Consolidated Motion.  *See* DE [73], ("Pl. Opp. to Con. Defs.' Mot.").  New York State filed a Reply on October 12, 2022 requesting that the Court decide the motion based on the State's Memorandum of Law.  *See* DE [45], ("NY

Reply"). Bank of America, Frenkel Lambert, RAS Legal Group and Reverse Mortgage Solutions filed their Consolidated Reply on January 27, 2023. *See* Reply in Support of Motion to Dismiss ("Defs.' Con. Reply"), DE [76].

Web Title was served with the Summons and Amended Complaint on October 13, 2022 and then moved for an extension of time to respond, which was granted by this Court. *See* DE [49]; December 8, 2022 Electronic Order. On November 7, 2022, Tarantino answered the Amended Complaint. DE [51].[1] On January 6, 2023, Web Title filed its motion to dismiss. *See* Web Title Mot. Plaintiff filed his Opposition titled Counterclaim Defendant Web Title on February 17, 2023 ("Pl. Opp. to Web Title Mot."), DE [80]. Web Title filed its Reply on March 17, 2023. *See* Reply in Support of Motion to Dismiss ("Web Title Reply"), DE [82].

On April 27, 2023, Judge Seybert referred Defendants' Consolidated Motion, New York State's Motion, and Web Title's Motion to this Court for Report and Recommendation. *See* April 27, 2023 Electronic Order. For the reasons set forth below, the Court recommends granting all three motions and dismissing Plaintiff's Amended Complaint with prejudice.

## II.   LEGAL STANDARD

### A.   Fed. R. Civ. P. 12(b)(1)

"It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Lyndonville Sav.*

---

[1] Tarantino did not join or file her own motion to dismiss in this case. Nevertheless, as explained below, the Court recommends that all of Plaintiff's claims be dismissed under the *Rooker-Feldman* doctrine, res judicata and collateral estoppel, so any remaining claims against Tarantino would also be dismissed should this Report and Recommendation be adopted.

*Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). To that end, "[d]etermining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. National Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001). Nevertheless, "[w]here subject matter jurisdiction is challenged, . . . a court may consider materials outside the pleadings, such as affidavits, documents and testimony." *Id.*; *see Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89, n.8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56.").

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Nevertheless, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)). "[T]hreadbare recitals of the elements of a cause of action," however, that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). "The court's consideration on a motion under Fed. R. Civ. P. 12(b)(6) is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see Burton v. American Fed'n of Gov't*

*Employees (AFGE) 1988*, No. 11-cv-1416, 2012 WL 3580399, at *5 (E.D.N.Y. Aug. 17, 2012).

### C. *Pro Se* Pleadings

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173 (1980); *see Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted). A court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Board of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted); *see Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999) (holding that a court must "make reasonable allowances so that . . . *pro se* plaintiffs do not forfeit their rights by virtue of their lack of legal training."). Nevertheless, the court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Ogunmokun v. American Educ. Servs./PHEAA*, No. 12-CV-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sep. 23, 2014) (quoting *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995)).

### III.  DISCUSSION

### A. Plaintiff's Claims Against New York State

New York State seeks to dismiss Plaintiff's claims arguing that it was improperly served, Fallica fails to state a cognizable claim for relief under Fed. R.

Civ. P. 12(b)(6), and the state and any state actor being sued is entitled to immunity requiring dismissal under Fed. R. Civ. P. 12(b)(1).  *See* NY Mem.  Applying the standards outlined above and for the reasons set forth below, the Court recommends that New York State's Motion be granted.

> 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under Section 1983, a plaintiff must demonstrate:  "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983); *see Dubin v. County of Nassau*, 277 F. Supp. 3d 366, 384 (E.D.N.Y. 2017) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

As for Section 1983 lawsuits against as state, "Eleventh Amendment immunity ultimately shields the State from any federal lawsuit against it 'in its own name regardless of the relief sought,' unless '[it] has waived its Eleventh Amendment immunity or Congress has overridden it.'" *Wallace v. New York*, 40 F. Supp. 3d 278, 304 (E.D.N.Y. 2014) (quoting *Kentucky Graham*, 473 U.S. 159, 167 n. 140 (1985)).

Eleventh Amendment immunity bars suits against the State for damages, and declaratory and injunctive relief. *Id*. at 304 (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908 (1984)). Eleventh Amendment immunity against a State is also extended to its agencies and officials sued in their official capacity. *Smith v. New York State Sec'y of State*, No. 20CV4958PKCPK, 2022 WL 970749, at *8 (E.D.N.Y. Mar. 31, 2022) (citing *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107 (1985)).

Moreover, qualified immunity protects state officials sued in their individual capacities from both civil damages and "'unnecessary and burdensome discovery or trial proceedings.'" *Spavone v. New York State Dep't of Corr. Services*, 719 F.3d 127, 134 (2d Cir. 2013) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 598, 118 S. Ct. 1584, 1596 (1998)), and applies to "circumstances where an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' and applies 'regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Spavone*, 719 F.3d at 135 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009)). The right must be "'clearly established' at the time of the challenged conduct." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). Moreover, "[s]o long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity." *Spavone*, 719 F.3d at 135 (internal quotations and citation omitted). "In assessing objective reasonableness, [courts] look to whether officers of reasonable competence

could disagree on the legality of the defendant's actions[,]" *McGarry v. Pallito*, 687 F.3d 505, 512 (2d Cir. 2012) (internal quotations and citation omitted); *see Manganiello*, 612 F.3d at 165, in light of the "particular factual context" he confronted. *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013). "In short, if at least some reasonable officers in the defendant's position could have believed that [the challenged conduct] was within the bounds of appropriate police responses, the defendant officer is entitled to qualified immunity." *Id.* (brackets in original) (quotations marks and citations omitted).

Finally, "[i]t is well established that judges and non-judicial officers of a court have absolute immunity from suits for money damages arising out of judicial acts performed in their judicial capacities." *Ceparano v. Southampton Just. Ct.*, No. cv 09-423, 2010 WL 11527157, at *6 (E.D.N.Y. Mar. 22, 2010), *report and recommendation adopted*, 2010 WL 11527158 (E.D.N.Y. May 12, 2010), *aff'd*, 404 F. App'x 537 (2d Cir. 2011) (citing *Bliven v. Hon. John Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)); *see Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (holding that absolute judicial immunity extends to court clerks who are performing tasks "which are judicial in nature and an integral part of the judicial process"); *Caldwell v. James*, No. 14-cv-5384, 2015 WL 427980, at *4 (E.D.N.Y. Jan. 30, 2015) ("[T]he clerk of the court and deputy clerks are shielded by an absolute quasi-judicial immunity, particularly when they perform tasks that are an integral part of the judicial process.") (internal quotation and citation omitted). "The absolute judicial immunity of a court and its members is not overcome by allegations of bad faith or malice, and

a judge cannot be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *McNamara v. Kaye*, No. 06-cv-5169, 2008 WL 3836024, at *8 (E.D.N.Y. Aug. 13, 2008) (internal quotation omitted).

Applying these standards, Plaintiff fails to state a viable claim against New York State or any state official. Initially, while "New York State" is a Defendant, only the Attorney General and the "NY State Courts" are mentioned in the body of the Amended Complaint with vague allegations of a policy violated and oversight failure in reviewing an adverse judgment. *See* AC at 1, 15-17, 26. These claims against the State, a state agency and state official sued in their official capacity are barred by Eleventh Amendment immunity. Moreover, any claim for damages, which Plaintiff seeks here, against the Attorney General or other state official in her individual capacity is barred by qualified immunity as Fallica fails to set forth a violation of a clearly established statutory or constitutional right. While Plaintiff further attempts to set forth a Fourth Amendment illegal seizure claim, Fallica fails to allege the Attorney General's involvement in the seizure of the Property such that it would constitute a deprivation by a state actor. Finally, to the extent the Amended Complaint can be read to assert a cause of action against a state court judge or court employee, any such claim is barred by judicial immunity. Even drawing all inferences in Plaintiff's favor and construing the allegations liberally, Fallica fails to identify an individual acting under the color of state law that deprived him of his constitutional rights for a viable Section 1983 claim. Accordingly, the Court recommends granting

New York State's Motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and that all claims against it and any state officials be dismissed.

### B. Plaintiff's Remaining Claims

Next, Defendants Bank of America, Reverse Mortgage Solutions, Frenkel Lambert, RAS Legal Group and Web Title argue that Fallica's claims should be dismissed because: (i) his claims are barred by the *Rooker-Feldman* Doctrine, res judicata and collateral estoppel; (ii) he fails to establish a viable cause of action against them under Rule 12(b)(6); and (iii) none of the Defendants have privity with or liability to Plaintiff. *See* Defs.' Con. Mem.; Web Title Mem.[2] Applying the standards outlined above, and for the reasons set forth below, the Court recommends granting Defendants' Consolidated Motion and Web Title's Motion.

### 1. The Rooker-Feldman Doctrine

Pursuant to the *Rooker-Feldman* doctrine, federal district courts are prohibited from exercising subject matter jurisdiction over suits that are, in substance, appeals from state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-15, 44 S. Ct. 149 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983). In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517 (2005), the Supreme Court limited the application of the *Rooker-Feldman* doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district

---

[2] Defendant Web Title makes the same arguments as the Defendants in their Consolidated Memorandum, so the Court addresses these motions together. *Compare* Defs.' Con. Mem., *with* Web Title Mem.

court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284, 125 S. Ct. 1517; *see Skinner v. Switzer*, 562 U.S. 521, 531, 131 S. Ct. 1289, 1297 (2011). Thus, there are four requirements for the *Rooker-Feldman* doctrine's application: (1) the party raising the claim must have lost in state court; (2) her injuries must be caused by the state court judgment; (3) the claim must invite the district court to review and reject the state court judgment; and (4) the state court judgment must have been rendered prior to the commencement of the federal court proceedings. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014); *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010). The first and fourth requirements are "procedural," while the second and third requirements are "substantive." *Morrison v. City of New York*, 591 F.3d 109, 112 (2d Cir. 2010); *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009).

Nevertheless, "[i]f a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." *Skinner*, 562 U.S. at 532, 131 S. Ct. at 1297 (quotations, brackets and citation omitted); *see Gordon v. First Franklin Fin. Corp.*, No. 15CV0775SJFAKT, 2016 WL 792412, at *4 (E.D.N.Y. Feb. 29, 2016). Indeed, the Second Circuit has held that where "claims sounding under the FDCPA, RICO, and state law speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments," the *Rooker-Feldman* doctrine does not apply. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94-95 (2d Cir. 2015). This is true where

19

"state-court judgments were a mere ratification of the harm allegedly caused by defendants." *Sung Cho v. City of New York,* 910 F.3d 639, 647 (2d Cir. 2018); *Gordon*, 2016 WL 792412, at *5 ("plaintiff's claims seeking to recover compensatory and punitive damages from defendants for injuries she allegedly sustained as a result of defendants' purported fraud, conversion, unjust enrichment and deceptive business practices do not require this Court to sit in review of the foreclosure judgment and, thus, are not barred by the *Rooker-Feldman* doctrine.").

Applying these standards, the Court concludes that *Rooker-Feldman* precludes only Plaintiff's Fourth Amendment illegal seizure claim and damages sought amounting to the Property's value.  All four factors of the *Rooker-Feldman* doctrine are present here as to the Fourth Amendment cause of action.  Fallica's claims regarding the foreclosure and sale of the Property were fully and fairly litigated as part of the state court action, and he lost.  Plaintiff's allegations regarding an illegal seizure of the Property, even construed liberally in his favor, essentially challenge the validity of the state court's judgment.  Fallica vaguely alleges that an overarching racketeering enterprise tainted the state court proceeding and those involved conspired to, among other things, deprive him of his rights as Nancy Fallica's heir. *See generally* AC.  Plaintiff's claims thus hinge on the allegation of unlawful conduct issuing the reverse mortgage and commencing the foreclosure litigation, which, in turn, requires review of the merits of the state court judgment, including a finding that the state court judgment against him in the foreclosure action was "illegal" or "fraudulent."  *See* AC 11-12.  It is also undisputed that the state court litigation

concluded, and the judgment of foreclosure and sale was rendered before this federal action was commenced.  Accordingly, Plaintiff's claims as to an illegal seizure and damages amounting to the Property value are barred under *Rooker-Feldman*.

Plaintiff's RICO and state law fraud and breach of fiduciary duty claims, however, fall under the fraud exception to the *Rooker-Feldman* doctrine.  Construing the Amended Complaint liberally, Plaintiff alleges that Defendants maliciously facilitated and ratified a fraudulent scheme through a reverse mortgage that was issued on a false title under Nancy Fallica's name and continued to collect payments on the mortgage, "stripping" the estate's funds to which Plaintiff alleges he was entitled.  *Id.* at 27.  According to Fallica, Defendants intentionally facilitated fraud on the state court throughout the foreclosure action in failing to provide proper notice to Plaintiff, altering documents, and falsely testifying as to who owned the Property. *Id*. at 28-30.  He further claims that Defendant's actions were not in the best interest of the estate resulting in a breach of fiduciary duty.  *Id.*  at 8-9.  Plaintiff seeks punitive damages as to these claims sustained as a result of Defendants' purported fraud.  *Id*. at 28-30.  These claims, therefore, do not amount to an appeal of the state court judgment of foreclosure and sale of the Property.  *See Gordon*, 2016 WL 792412, at *5.  Accordingly, the Court recommends denying Defendants' motion as to Plaintiff's RICO, fraud and breach of fiduciary duty claims under *Rooker-Feldman*, but as explained below, concludes that the remaining causes of action should be dismissed on alternative grounds.

### 2. *Res Judicata*

Next, Defendants argue that res judicata bars Plaintiff's claims.  A challenge under res judicata "may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).  "Under the doctrine of res judicata, a 'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Aghaeepour v. Northern Leasing Sys., Inc.*, 378 F. Supp. 3d 254, 265 (S.D.N.Y. 2019) (quoting *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007)).

Because a federal court must give a state-court judgment the same preclusive effect it would be given by the courts of that state, Defendants' res judicata defense is governed by New York law.  *See Ferris v. Cuevas*, 118 F.3d 122, 125-26 (2d Cir. 1997).  In New York, "[t]he doctrine of res judicata precludes a party from litigating a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter[.]" *Josey v. Goord*, 9 N.Y.3d 386, 389, 849 N.Y.S. 2d 497, 499 (2007) (quotations and citation omitted); *see Landau, P.C. v. LaRossa, Mitchell & Ross,* 11 N.Y.3d 8, 12, 862 N.Y.S. 2d 316, 319 (2008) ("[U]nder res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action.") (quotations and citation omitted).  Thus, "[r]es judicata applies in New York where (1) there is a previous adjudication on the merits; (2) the previous action involved the party against whom res judicata is invoked or its privy; and (3) the claims involved were or could have been raised in the previous action." *Niles v. Wilshire Inv. Grp., LLC*, 859 F. Supp. 2d 308, 338 (E.D.N.Y.

2012) (quotations, brackets and citation omitted).  Res judicata "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation[,]" because "a party who has been given a full and fair opportunity to litigate a claim should not be allowed to do so again."  *Matter of Hunter*, 4 N.Y.3d 260, 269, 794 N.Y.S. 2d 286, 291 (2005).

New York generally applies a "transactional approach" to res judicata, such that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy[.]"  *Id.* (quotations and citation omitted).  In determining whether particular claims are part of the same transaction for purposes of res judicata, New York courts apply a "pragmatic" test, "analyzing whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage[.]"  *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100-01, 810 N.Y.S. 2d 96, 98 (2005) (quotations and citation omitted).

In the foreclosure context specifically, "[c]ourts in this Circuit have found a plaintiff's federal court claim is precluded by a state-court judgment . . . when the plaintiff has alleged in federal court that the defendants acted improperly in connection with the making, validity, or enforcement of the underlying mortgage."  *Bell v. Deutsche Bank*, No. 18-cv-1593, 2019 WL 4917901, at *5 (E.D.N.Y. Sep. 30, 2019) (collecting cases); *see George v. Nationstar Mortg., LLC*, No. 16-cv-261, 2017 WL 3316065, at *7 (E.D.N.Y. Aug. 2, 2017); *Zap v. Federal Home Mortg. Corp.*, No.

15-cv-0624, 2016 WL 2992147, at *4 (N.D.N.Y. May 20, 2016); *Gordon*, 2016 WL 792412, at *7; *Solomon v. Ocwen Loan Servicing, LLC*, No. 12-cv-2856, 2013 WL 1715878, at *7 (E.D.N.Y. Apr. 12, 2013).

Applying these standards, the Court concludes that Plaintiff's remaining claims under RICO and state law are barred by res judicata. The foreclosure judgment constitutes a final adjudication on the merits, Plaintiff was a named party in the state foreclosure action, and Defendants were involved in or in privity with parties thereto as Bank of America was the plaintiff in the foreclosure proceedings, RAS Legal Group and Frenkel Lambert were its counsel, and Reverse Mortgage Solutions and Web Title were witnesses. Fallica's claims of racketeering activity, mortgage fraud, and breach of fiduciary duty relate to the parties' rights and obligations with respect to the Property, and could have been asserted by Plaintiff as defenses in the state foreclosure action. These claims all stem from the same transaction, namely, the execution of the allegedly fraudulent reverse mortgage in Nancy Fallica's name. While Plaintiff attempts to seek different remedy of punitive damages stemming from the fraud, any issues with the validity of the reverse mortgage should have been raised in the state court foreclosure action by Plaintiff. Accordingly, Fallica's remaining claims are barred by the doctrine of res judicata, and the Court recommends granting Defendants' motions on these grounds and dismissing Plaintiff's remaining claims.

### 3. *Collateral Estoppel*

Next, Defendants argue that collateral estoppel bars Plaintiff's claims. The doctrine of collateral estoppel is also properly reviewed under Rule 12(b)(6). *Board of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp 2d. 463, 470 (S.D.N.Y. 2009) (citing *Sassower v. Abrams*, 833 F. Supp. 253, 264, n.18 (S.D.N.Y. 1993) (finding it "well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion.")). Under New York law, collateral estoppel bars re-litigation of an issue when (1) "the identical issue necessarily was decided in the prior action and is decisive of the present action"; and (2) "the party to be precluded from re-litigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt*, 701 F. Supp. 2d 340, 349-50 (E.D.N.Y. 2010); *see In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (finding that "the doctrine of collateral estoppel precludes a party from litigating in a subsequent action or proceeding on an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same") (internal quotations and citations omitted). Moreover, "collateral estoppel generally does not include a requirement that the parties against whom plaintiffs litigated in the prior proceeding be the same parties they litigate against in the current proceeding." *Caldwell*, 701 F. Supp. 2d at 350 (citing *United States v. Mendoza*, 464 U.S. 154, 158, 104 S. Ct. 568 (1984).

Applying these standards, the Court similarly concludes that the Defendants have established that Plaintiff is collaterally estopped from prosecuting his Amended

Complaint against them.  Fallica's claims brought here would have to have been – and, in fact, were – "necessarily decided" in the foreclosure litigation, in which Fallica "had a full and fair opportunity to litigate the issue[s] in the prior action." *Caldwell*, 701 F. Supp. 2d at 349-50.  This includes the validity of the reverse mortgage and Defendants purported fraudulent activity in "ratifying" the mortgage, issues that Plaintiff should have raised in the foreclosure action.  Accordingly, the Court respectfully recommends that the Defendants' motions to dismiss the Amended Complaint on this alternative basis be granted.

### 4.  Federal Claims

Notwithstanding the Court's recommendations as to Defendants' arguments under *Rooker-Feldman*, res judicata and collateral estoppel, the Court evaluates whether Fallica's individual causes of action should be dismissed for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  While not addressed in Defendants' motions, Plaintiff fails to sufficiently plead each of his federal claims as a matter of law.

### a.  RICO

Congress enacted RICO to "'prevent organized crime from infiltrating America's legitimate business organizations.'"  *Manley v. Doby*, No. 12-cv-4835, 2012 WL 5866210, at *3 (E.D.N.Y. Nov. 19, 2012) (quoting *Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361, 371 (E.D.N.Y. 2002)).  The Act contains a criminal provision, *see* 18 U.S.C. § 1962, and a civil provision, *see* 18 U.S.C. § 1964.  To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962;

(2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)).

The Second Circuit has held that a RICO plaintiff has two pleading burdens. First, a plaintiff "must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as 'criminal RICO.'" *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). To satisfy this burden, the plaintiff must allege "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id.* (quoting 18 U.S.C. § 1962(a)-(c)). A plaintiff must adequately allege these seven elements "before turning to the second burden—*i.e.*, invoking RICO's civil remedies." *Id.* (internal citation omitted). To satisfy the second burden, a plaintiff "must allege that he was 'injured in his business or property by reason of a violation of section 1962.'" *Id.* (quoting 18 U.S.C. § 1964(c)).

The federal offenses of wire and mail fraud, which Plaintiff alleges here, are predicate offenses which qualify as "racketeering activity." 18 U.S.C. § 1961(1); *see* 18 U.S.C. §§ 1341, 1343. An essential element of wire and mail fraud is a "scheme or artifice to defraud," and it requires "proof that defendants possessed a fraudulent intent." *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987); *see Beck v.*

*Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49 (2d Cir. 1987) ("In general, the mail and wire fraud statutes require, *inter alia*, a showing of intentional fraud."), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989). The elements of a "'scheme to defraud'" are "'(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations.'" *Sampson v. Medisys Health Network Inc.*, No. 10-cv-1342, 2011 WL 579155, at *5 (E.D.N.Y. Feb. 8, 2011) (quoting *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000)). "To successfully plead a RICO claim, 'the circumstances constituting the alleged fraud must be pled with particularity.'" *Sampson*, 2011 WL 579155, at *5 (quoting Fed. R. Civ. P. 9(b)).

Here, the Court concludes that the Amended Complaint fails to set forth a plausible RICO cause of action. Initially, Plaintiff fails to allege, with the required particularity, that Defendants – either jointly or individually – committed two or more injurious acts, such that they could be considered a "pattern." Indeed, Fallica fails to identify any individual Defendant's purported wrongful acts or omissions with the particularity required by Rule 9(b). Further, the Amended Complaint does not plausibly allege that Defendants were engaged in a "racketeering activity" through mail or wire fraud or how they participated in an "enterprise." *See First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994) ("[A] series of discontinuous independent frauds is no more an 'enterprise' than it is a single conspiracy."). These omissions are fatal to Fallica's RICO claim, especially in light of his burden to allege multiple predicate acts which

constitute a pattern of racketeering activity. Accordingly, the Court respectfully recommends that Plaintiff's RICO claim be dismissed for failure to state a claim.

### b. *Fourth Amendment Unlawful Seizure*

The Fourth Amendment protects against unreasonable seizures by the government. *See, e.g., United States v. Jacobsen*, 466 U.S. 109, 113-14, 104 S. Ct. 1652, 1656 (1984). Because the Court recommends dismissing New York State as a Defendant in this case for the reasons set forth above, and the remaining Defendants are not state actors, Fallica fails to state a claim as a matter of law. *See Jones Bey v. Sirius-El*, 22CV4649PKCRER, 2022 WL 3576756, at *2 (E.D.N.Y. Aug. 19, 2022), *appeal dismissed* (Apr. 6, 2023), *appeal transferred*, 2022-2219, 2023 WL 1163117 (Fed. Cir. Jan. 31, 2023) (dismissing Fourth Amendment claims against non-state actors). Accordingly, the Court recommends it also be dismissed for failure to allege a cause of action.

### 5. *State Law Claims*

Plaintiff asserts state law claims of fraud and breach of fiduciary duty. Having determined that Fallica's federal claims should be dismissed for failure to state a claim, to the extent the district court declines to adopt this Report and Recommendation on *Rooker-Feldman*, res judicata and collateral estoppel grounds, the Court recommends declining to exercise supplemental jurisdiction over his state law claims. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation

marks omitted)); *see Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-cv-2485, 2011 WL 2471733, at *8 (E.D.N.Y. May 16, 2011) (recommending that the district court decline to exercise supplemental jurisdiction), *report and recommendation adopted*, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011). Indeed, "[i]n the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-cv-6497, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007), *aff'd sub nom. Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122 (2d Cir. 2008) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986), *cert. denied*, 476 U.S. 1159, 1159, 106 S. Ct. 2278, 2278 (1986)); *see City of Chi. v. International Coll. of Surgeons*, 522 U.S. 156, 173, 118 S. Ct. 523, 534 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988)) ("[T]he statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, a 'federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.'"). Accordingly, the Court respectfully recommends that Plaintiff's causes of action for fraud and breach of fiduciary duty be dismissed.

### C. Leave to Amend

Although Plaintiff did not request leave to amend, the Court may grant such leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has held that "a *pro se* litigant in particular 'should be afforded every reasonable opportunity

to demonstrate that he has a valid claim.'" *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984) ); *see Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them."). "Amendments are generally favored because they tend to facilitate a proper decision on the merits." *Rodriguez v. Ridge Pizza Inc.*, No. 16-CV-0254, 2018 WL 1335358, at *3-4 (E.D.N.Y. Mar. 15, 2018) (quoting *MHANY Mgmt. v. County of Nassau*, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012)); *see Johnson v. Landmark Hosp. LLC*, No. 14-CV-6839, 2016 WL 843286, at *2 (E.D.N.Y. Mar. 1, 2016) (quoting *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)). Leave to amend a complaint should only be denied "if there is delay, bad faith, futility, or prejudice to the non-moving party." *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)). Finally, a district court may deny leave to amend when an "amendment would be futile because the problem with the claim 'is substantive . . . [and] better pleading will not cure it.'" *Reynolds v. City of Mount Vernon*, 14-CV-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (alteration in original)).

Applying these standards, because the Court recommends dismissing Plaintiff's claims based on the *Rooker-Feldman* doctrine, res judicata and collateral estoppel, any amendment would be futile. There are no additional factual allegations

Plaintiff could offer that would cure the substantive defects in his claims. Accordingly, the Court recommends that Fallica be denied leave to file a second amended complaint.

## IV.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends granting Defendants' Consolidated Motion, New York State's Motion and Web Title's Motion in their entireties and dismissing Plaintiff's Amended Complaint with prejudice.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being sent to Defendants by electronic filing on the date below.  Bank of America is directed to serve a copy of it on Plaintiff via first-class mail and promptly file proof of service by ECF.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. 22 Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      June 1, 2023

                      /s/ Steven I. Locke
                      STEVEN I. LOCKE
                      United States Magistrate Judge